IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | * | |
| | * | |
| Plaintiff, | * | |
| And | * | CIVIL ACTION NO. RWT-08-CV-1883 |
| | * | |
| ORA LOUISE BORRELL | * | |
| Plaintiff-Intervenor | * | |
| v. | * | |
| BARDON, INC., t/a AGGREGATE INDUSTRIES | * | |
| Defendant. | * | |

## DEFENDANT'S MOTION FOR RECONSIDERATION, IN PART, OF THIS COURT'S PARTIAL DENIAL OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, Bardon, Inc., t/a Aggregate Industries ("Aggregate," "the Company," or "Defendant"), by and through its undersigned labor counsel, and pursuant to Local Rule 105.10, hereby files the following Motion for Reconsideration, in Part, of this Court's Partial Denial of its Motion for Summary Judgment and for support states as follows:

### A. The Court Erred in Failing to Dismiss the EEOC's Discriminatory Discharge Claim.

As Defendant pointed out in its Motion for Summary Judgment, the EEOC claimed in its Complaint that Aggregate terminated Borrell "because of" her sex. *See* EEOC's Complaint at ¶ 7(b). Defendant argued in its Motion—an argument which went uncontested until the oral argument on Defendant's dispositive motion—that the EEOC had not adduced evidence sufficient to make out even a *prima facie* case of discharge based on sex. The reason, we argued, that the EEOC's claim failed was that it could not establish the fourth prong of such a claim, *i.e.*, that Borrell, after she was terminated, was replaced by a male or that the position

1

remained open to a male. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989)).

Counsel for the EEOC, Cecile Quinlan, apparently unwilling to concede *any* point at argument, stated that it is *not* incumbent on the EEOC as plaintiff to show that a job remained open after she was terminated in order to make out a *prima facie* case of discriminatory discharge based on sex, because *Borrell* was laid off for economic reasons. Tr. at 49. *Borrell was not laid off*; the record is clear that she was *terminated* for misconduct. There was no reduction in force of Quality Control Specialists in the action taken on January 12, 2007; Borrell was fired for violation of Company policy concerning revelation of confidential internal matters to a third party. The only economic layoff in *this* record is that of Leroy Newman, and he was not a Quality Control Specialist. There is no basis for the EEOC's position, as District courts in the Fourth Circuit, including this Court, are clear that the fourth prong of a discriminatory discharge case is *not* without moment. *See, e.g., Fornah v. Univ. of Md.*, 2009 U.S. Dist. LEXIS 91040, 107 FEP Cases 870 (D. Md. Sept. 30, 2009) (Summary judgment granted where defendant cancelled job opening and did not hire anyone for position for which plaintiff applied); (*Kinnally v. Marriott Int'l, Inc.*, 2006 U.S. Dist. LEXIS 699 (D.S.C., Jan. 3, 2006), *aff'd* 205 Fed. Appx. 145 (4th Cir., Oct. 11, 2006) (Summary judgment granted where defendant had not replaced plaintiff and plaintiff presented no evidence that position remained open).

As stated above, and as the EEOC conceded at oral argument, Aggregate has not hired another Quality Control Technician to replace Borrell, who was terminated on January 12, 2007. There is no evidence or even any suggestion or allegation, that Borrell's position has remained open. In *Fornah* and *Kinnally, supra*, this Court granted summary judgment to the employers where the plaintiffs in each case had applied for an open position, and the employer later decided not to fill that position and cancelled the job opening. If there are any differences between the present facts and the facts in those cases, they are without moment, for we submit there is no meaningful distinction between an employer's deciding to cancel an open, posted

2

position and Aggregate's not deciding to fill a position which opened, however briefly, when Borrell was terminated, *not laid off*. Defendant is aware of no authority which stands for the proposition that a plaintiff does not have to show that she was replaced or that her job remained open in a discriminatory discharge case if she was terminated for misconduct.

Assuming *arguendo* the EEOC were able to establish a *prima facie* claim of discriminatory discharge, it would also have the burden, under *McDonnell Douglas*, of showing that Aggregate's reasons for terminating Borrell were pretextual for sex discrimination, a proposition for which there is absolutely no support or evidence in the record. While this Court has concluded that there exists a dispute of material fact as to whether the Company terminated Borrell in retaliation for her lodging an internal complaint of sexual harassment, there has been absolutely no evidence adduced that her sex played a part in the Company's decision to terminate her. The EEOC did not even attempt to make an argument on this point in the papers and did not articulate its position at oral argument beyond a bare assertion that it is not necessary for it to establish that Borrell was replaced, which supports Defendant's position that no such evidence exists in the record. All the EEOC can do is offer a bare allegation that Borrell was terminated because of her sex, an allegation listed in its Complaint and never pursued thereafter, which is not sufficient for that claim to survive.

### B. The Court Erred in Failing to Grant Defendant Summary Judgment as to Punitive Damages.

This Court also erred when it declined to enter judgment in Defendant's favor as to punitive damages. For an employer to be liable for punitive damages under Title VII, the evidence must show the following: (1) the employee "served the employer in a managerial capacity;" (2) the employee "committed the intentional discrimination at issue while acting in the scope of employment;" **and** (3) "the employer did not engage in good-faith efforts to comply with Title VII." *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 442 (4th Cir. 2000), *cert. denied*, 531 U.S. 822 (2000). With respect to the third element, the Supreme Court in *Kolstad v.*

3

*American Dental Ass'n*, 527 U.S. 526, 544-45 (1999), rejected the traditional "scope of employment" rule, reasoning that it would "reduce the incentive for employers to implement antidiscrimination programs" and unfairly penalize employers who take steps to comply with Title VII. Therefore, even if the first two elements are met, punitive damages are still unavailable where intentional discrimination on the part of managers is contrary to an employer's good-faith efforts to comply with Title VII. *Id.*

In *Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153 (D. Md. 2000), this Court found that management officials of the defendant employer could be found to have satisfied the first two (2) elements of the test for punitive damages. However, the Court found that

> the record clearly establishes that [defendant] published, maintained, and distributed sexual harassment, open door, and equal opportunity policies... Indeed, [defendant's] good faith efforts to maintain such a policy are exhibited by the ease with which plaintiff was able to report the alleged sexual harassment by Mr. Amos against her. Whether one agrees with the way Ms. Harris handled that complaint or not, it is clear that [defendant] made good faith efforts to have a reasonable complaint procedure in place. 125 F. Supp.2d at 172.

The Court pointed out that there were no allegations that the defendant's "procedures were a mere facade or 'mask' designed to hide a corporate policy of discrimination." *Id.*, fn.20. The Court, as an example of a case involving an alleged "facade" or false attempt to comply with Title VII, cited *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431 (4th Cir. 2000), a case, discussed by Plaintiffs in their Opposition to Defendant's Motion for Summary Judgment and by Defendant in its Reply, involving evidence that *top executives of Circuit City responsible for the entire company's complaint system* harbored racial animus.

The only incidents involving managers that could be characterized as "intentional discrimination" are, arguably, the incident with Tom Miller "showing" Borrell a pornographic video and Borrell's termination, in which David Gay and Jeffry Greene, both individuals with managerial authority, were involved. The Miller incident was discrete and, even if it happened as Borrell alleges, did not recur. Miller had absolutely nothing to do with the implementation of the Company's complaint and discrimination procedures. The Court should not have difficulty in

4

finding that this incident cannot be the basis of a punitive damages award. With respect to the retaliation issue, perhaps the best illustration of why punitive damages are unwarranted here is the following exchange between the Court and counsel for Plaintiff-Intervenor:

> MS. THATCHER: Because the -- well, one, the facts of this case. I mean, the management was armed -- this management was armed with a complaint from Louise Borrell and what stands out as such mismanagement is that they never interviewed her. Never interviewed her. And they make up a rule, a reason that she somehow breached confidentiality. Now, I'm going to submit, Your Honor, that that is really in reckless, reckless disregard for Louise Borrell's rights under Title VII. They should have known better. Tr. at 59[1].
>
> \*\*\*\*\*\*
>
> MS. THATCHER: In particular, in this case you heard Mr. Buchsbaum, that his client Aggregate, they're aware of sex harassment, they have methods to -- there are methods to complain and how to complain, et cetera. So, they're clearly aware of Title VII and the federal law. But what they did was they terminated her and I'm going to suggest in the face of a perceived risk of violating Title VII. In other words, the Work Rule No. 2, nothing to do with breach of confidentiality. Just the plain reading of that work rule had nothing to do with confidentiality. And these were managers in that termination meeting. They made no good faith effort, none, to comply with Title VII. *Id.* at 60-61.

Counsel for Plaintiff-Intervenor, when questioned on the issue of punitive damages, merely argued that managers at Aggregate acted in reckless disregard as to Borrell's rights under Title VII. Counsel argues that "these were managers in that termination meeting. They made no good faith effort" to comply with Title VII. However, Plaintiff-Intervenor must show that *Defendant, and not its managers individually,* failed to make good-faith attempts to comply with Title VII. It is telling that Plaintiff-Intervenor's counsel focused entirely on the conduct of certain lower individuals in management; there is no evidence in the record that "the Company" failed to comply with Title VII.

The facts show *only* that, drawing all inferences in Borrell's favor, Greene and Gay might have intentionally discriminated against Borrell, *i.e.*, retaliated against her by terminating her for

---

[1] And, as the undersigned argued on rebuttal, Defendant *did* in fact interview Borrell before giving her the first draft of the November, 2006, letter; both Jeffry Greene and Terry Barnes met with her, listened to her and at the end of that Friday, November 17, 2006, session, handed her the first draft. Tr. at 61.

engaging in protected activity and did so within the scope of their employment. However, the above cases are clear that that is simply insufficient to permit a jury to impose punitive damages. There is no evidence whatsoever of the type in *Lowery* which shows that Aggregate's attempts to comply with Title VII were a sham or were not in good faith. Like *Jaudon*, the record is clear here that Aggregate maintained a complaint procedure and proper sexual harassment policy. The Company distributes those procedures and policies to all employees when they begin work; Borrell herself signed for them when she started as a new employee. The Company, the record is clear, periodically trains its employees with respect to those procedures; Borrell attended *at least* three (3) such training sessions over the approximately two and one-half (2 ½) years she worked at Aggregate. The Company, the record shows, regularly trains its management with respect to those policies. There is no evidence that any of the top executives at Aggregate harbored gender animus as was the case in *Lowery*.

The Court stated in its oral opinion at the hearing on November 13, 2009, that there are facts which if believed could give rise to a punitive damages claim. We respectfully disagree that any such facts exist sufficient to nullify the Supreme Court's teaching in *Kolstad, supra*, 527 U.S. at 543, or the numerous Fourth Circuit opinions issued in *Kolstad's* wake. The most that can be arguably advanced (to defeat the MSJ) is that Greene and Gay intentionally discriminated against Borrell and did so within the scope of their employment. However, such conduct would have been in violation of Aggregate's published policy and the Company's efforts to comply with Title VII. Assessing punitive damages against Aggregate in these circumstances would carry with it the same disincentives to comply with Title VII which *Kolstad* and subsequent cases seek to avoid. Again, we submit the Court should revisit its decision and grant summary judgment to Defendant as to punitive damages.

### C. Conclusion.

For the above reasons, and Supreme Court and Fourth Circuit decisional law, we respectfully submit that the Court erred in failing to grant summary judgment to Defendant on the count alleging discharge because of sex contained in Paragraph 7(b) of Plaintiff's Complaint as well as the demand for punitive damages contained in Plaintiff's and Plaintiff-Intervenor's Complaints, and Defendant requests that it enter judgment in Defendant's favor in these respects.

Respectfully submitted,

_____
Norman R. Buchsbaum, Md. Bar No. 01892

_____
Louis J. Cannon, Jr., Md. Bar No. 17157

400 E. Pratt Street, Suite 600
Baltimore, Maryland   21202-3126
Tel:  (410) 332-1343
Fax:  (410) 625-1073
E-mail:  NBuchs6124@aol.com
*Attorneys for Defendant*

Dated this 16th day of November, 2009,
at Baltimore, Maryland

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2009, Defendant filed its Motion for Reconsideration, in Part, of this Court's Partial Denial of its Motion for Summary Judgment with this Court using the CM/ECF filing system, which will electronically serve the following:

        Linda Hitt Thatcher, Esquire (Md. Bar No. 05039)
        Abbey G. Hairston, Esquire (Md. Bar No. 12082)
        Christopher P. Suzie, Esquire (Md. Bar No. 27961)
        Thatcher Law Firm, LLC
        Belle Point Office Park
        7849 Belle Point Drive
        Greenbelt, Maryland 20770
        Telephone number: (301) 441-1400
        Facsimile number: (301) 441-9602
        lht@thatcherlaw.com

and

        Debra Michele Lawrence, Esquire (Md. Bar No. 04312)
        Cecile Celeste Quinlan, Esquire (Md. Bar No. 0672)
        U.S. Equal Employment Opportunity Commission
        City Crescent Building
        10 South Howard Street; 3rd Floor
        Baltimore, Maryland 21201
        Telephone number: (410) 209-2728
        Facsimile number: (410) 962-4270
        debra.lawrence@eeoc.gov
        cecile.quinlan@eeoc.gov

_____
Louis J. Cannon, Jr.