**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| **Plaintiff,** | Case No. RWT-08-01883 |
| and | |
| ORA LOUISE BORRELL, | |
| **Plaintiff- Intervenor,** | |
| v. | |
| BARDON, INC., t/a AGGREGATE INDUSTRIES, | |
| **Defendant.** | |

**JOINT PRETRIAL ORDER**

### I.   PLAINTIFFS' BRIEF STATEMENT OF FACTS[1]

Defendant, Bardon, Inc. t/a Aggregate Industries ("Defendant" or "Aggregate")[2] is a $1.2 billion

dollar multination corporation with approximately 6,000 employees.  Defendant's Mid-Atlantic headquarters

is located in Greenbelt, Maryland. Defendant engages in the business of supplying ready-mix concrete, sand

and gravel. It employs very few women at its worksites. In fact, Louise Borrell ("Mrs. Borrell"), a former

quality control technician, was one of only two women ever to work in that position in the company's Mid-

Atlantic Region.

---

[1] The term Plaintiffs encompasses Plaintiff Equal Employment Opportunity Commission and Plaintiff-Intervenor Ora Louise Borrell.
[2] Aggregate Industries is the name of the Defendant, but aggregate is also an umbrella term used to refer to sand, gravel, and crushed stone.

Mrs. Borrell labored in what her supervisors have called a "man's world." As a quality control technician, Mrs. Borrell traveled to Defendant's mines and quarries throughout Maryland and Virginia to test the sand and gravel products. Working out in the field distinguished Mrs. Borrell from almost all of Aggregate's other female employees in Virginia or Maryland. Most women working at Defendant worked inside offices as administrative assistants or radio dispatchers.

After gathering samples from the Defendant's worksites, Mrs. Borrell took those to the Defendant's laboratory to test them to ensure that they complied with government and industry-wide standards. These standards were designed to ensure that the company's concrete and other products would meet the rigorous demands of the bridges, tunnels, highways, and building structures in which they were used. Mrs. Borrell's job as a quality control technician was a highly skilled position and she had to pass rigorous tests in order to gain the necessary certifications to work as a quality control technician.

Mrs. Borrell worked alongside state quality control personnel from Virginia and Maryland. Mrs. Borrell and the state inspectors went to Defendant's work sites to gather samples together so that the state could test the quality of the Defendant's product and the company could have a sample of what the state was testing. Mrs. Borrell received uniformly good performance reviews. She was never disciplined in any way before she filed internal sex harassment complaint.

Several of Defendant's male employees resented her for being at their work sites. To them, she was an intruder into their male-centered world. They decided to show Mrs. Borrell that she was not welcome through a series of grotesque acts including: repeatedly exposing their penises to her, urinating in front of her, showing her pornography depicting acts of bestiality, propositioning her for sexual favors, and grabbing Mrs. Borrell's buttocks. As described in more detail below, each act was not just crass or juvenile—instead,

it was a message to Mrs. Borrell, a reminder that she was not a man and that she would never be accepted by her employer.

<u>Urination/Frontal Male Nudity</u>

Shortly after Mrs. Borrell began working in the field at Defendant's La Plata facility, truck drivers there began urinating in front of her. Mrs. Borrell asked them to stop, or to find a more private place to urinate. Instead of doing either, they exposed their penises to Mrs. Borrell, and began urinating even closer to her. Mrs. Borrell told her supervisor, Tom Miller, about this conduct and asked him to intervene. Miller told her that she was in a man's world and that she should get used to it.

<u>Urine Covered and Pornography Strewn Female Restroom</u>

Mrs. Borrell's office was at the Defendant's Waldorf facility from approximately March, 2005 until October, 2006. When Mrs. Borrell worked in Waldorf, she was effectively denied the use of the women's only restroom, because the men at the site would go into the bathroom, urinate all over the sink, the toilet, and the floor, and leave cigarette butts strewn everywhere. In addition to urinating everywhere, the men left pornographic magazines, including Hustler, laying out on the floor and the shelves. These pornographic magazines were intentionally turned open to pornographic photos which Mrs. Borrell could not avoid seeing. Moreover, pubic hair and other suspicious fluids were readily apparent on the countertops, in the sink, and on the floor.

Mrs. Borrell, seeking a practical solution to this harassing conduct, asked her, if a lock could be put on the bathroom door and keys could only be given to women. This would ensure that only females could access the women's restroom. But, he ignored her request and made no effort to try and solve the problem. Instead, he scolded her, telling her to "keep quiet" and that she should clean up the mess herself. Mrs. Borrell dutifully used her own personal money to buy cleaning supplies and cleaned the bathroom

Bestiality Sex Video

One afternoon, Mr. Miller called Mrs. Borrell into his office and showed her a grotesque octopus sex video. The video depicts a woman in a kneeling position with an octopus stuffed into her vagina[3]. As the video begins, the tentacles of the octopus dangle from her vagina. Her anus is exposed. Over the course of a minute, the video shows the woman squeeze the octopus out of her vagina. After the octopus has fully exited her vagina, another person takes the octopus and places it on top of her anus. Mrs. Borrell found the video to be repulsive.

Sexual Advances/Inappropriate Touching

In early November, 2006, Mrs. Borrell worked at Defendant's site in King George, Virginia. There, two male employees (Francis "Leroy" Newman and Stacy Shanklin) made crude sexual advances to Mrs. Borrell. These advances included saying things such as, "damn I bet you taste good," "I'd like to eat you so I can see what you taste like," and "I'd like to drive [you] from behind." These activities culminated in Newman grabbing Mrs. Borrell's buttocks.

Sham Investigation

Mr. Borrell's work environment was sexually hostile. On November 15, 2006, Mrs. Borrell complained in writing to her supervisors asking them to end this harassment. In response, Defendant assigned Terry Barnes, a human resources generalist, to interview Newman. Defendant never interviewed Borrell. After having spoken to Newman, Defendant blamed Mrs. Borrell for the harassment she was being subjected to. The culmination of Aggregate's sham investigation was presenting Mrs. Borrell with a letter branding her as "playful and flirty" and insinuating that she invited Newman's sexual advances. Mrs. Borrell

---

[3] This video can be seen at http://www.octopusgirl.com.

was told that she should keep to herself and not interact with other co-workers. After Borrell complained about the letter, Defendant issued a second letter omitting the word "flirty."

Mrs. Borrell was understandably upset with the way that Defendant handled her complaint. No one told her that she had to keep her frustration a secret. Accordingly, she told people that she had made a sex harassment complaint and that she believed Defendant did not handle it the right way. One of the people Mrs. Borrell spoke to was J.B. Durrette, an engineering technician at the Virginia Department of Transportation. Mrs. Borrell worked with Durrette when they were jointly collecting samples.

<u>Retaliatory Termination</u>

Aggregate became aware that Mrs. Borrell complained to Mr. Durrette and used this as a justification for firing her on January 12, 2007. Defendant stated that Mrs. Borrell had breached a confidentiality provision by discussing her disappointment with the sexual harassment investigation. This provision—Work Rule No. 2—is actually entitled "Obey the Law" and is about "company proprietary and confidential information." Clearly from the context of this work rule, it relates to business or trade secrets, not to sexual harassment investigations. Therefore, the citation to Work Rule No. 2 as grounds for firing Mrs. Borrell is nothing more than pretext for the retaliatory firing of Mrs. Borrell for making a sexual harassment complaint.

## II.      PLAINTIFFS' LEGAL THEORIES IN SUPPORT OF EACH CLAIM

1.  <u>Sex Discrimination-Hostile Work Environment Under Title VII</u>: Defendant discriminated against Mrs. Borrell by subjecting her to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by acts including, but not limited to, Mrs. Borrell:

    a.   being forced to watch a bestiality video involving a woman and an octopus;

5

    b.  being required to use and cleanup a bathroom where male employees regularly urinated in the sink and on the floor;

    c.  being required to use a bathroom where male employees put pornography on the floor;

    d.  being urinated in front of by male employees and being ridiculed when she complained about this;

    e.  having men respond to her complaints by frontally exposing themselves to her;

    f.  being subjected to a barrage of sexually degrading comments; and

    g.  being touched inappropriately by a co-worker who grabbed her buttocks.

2.  <u>Retaliation Under Title VII</u>: Defendant retaliated against Mrs. Borrell in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 by acts including, but not limited to:

    a.  firing her after she made a sex harassment complaint, even though Defendant gave her excellent work performance evaluations;

    b.  soliciting Defendant's employees to tell false stories about Mrs. Borrell;

    c.  concocting a pretextual story that she was fired for having violated "Work Rule No. 2"; and

    d.  Attempting to pressure a Virginia Department of Transportation inspector into making a false statement that Mrs. Borrell had offered him oral sex.

3.  <u>Sex Discrimination and Retaliation Under the Prince George's County Code</u>: The Prince George's County Code section 2-222 outlaws sexual discrimination and, as interpreted by the Maryland courts, retaliation based upon protected activity. The Plaintiff-Intervenor has brought suit under section 2-222 pursuant to section 20-1202 of the State Government Article of the Maryland Code

**6**

Annotated. The elements of a Prince George's County Code claim for sex discrimination and retaliation, are substantially similar to those under Title VII and the same facts used to prove Plaintiffs' Title VII claim will be used to prove Plaintiff-Intervenor's Prince George's County claim.

### III.   PLAINTIFFS' REQUESTED STIPULATIONS OF FACT

1.  All conditions precedent to the institution of this lawsuit have been fulfilled.

2.  Defendant stipulates to the accuracy of Plaintiffs' calculations for Mrs. Borrell's back pay and front pay as set forth in Plaintiffs' Exhibit 60.

3.  Louise Borrell was never interviewed by anyone at Aggregate, including the company Human Resources department, after filing her internal written complaint of sexual harassment.

4.  The video found at www.octorpusgirl.com is the video that Louise Borrell makes reference to as the octopus sex video throughout this litigation.

5.  The video found at www.octopusgirl.com is the video which Tom Miller references in his deposition testimony.

6.  The video found at www.octopusgirl.com is the video which Gail Slaughter references in her deposition testimony.

7.  For the purposes of Title VII of the Civil Rights Act of 1964, Defendant employed more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year.

8. Mrs. Borrell was an employee within the meaning of Title VII and the Prince George's County Code.

9. Some of Mrs. Borrell's harassers were supervisors.

10. Defendant terminated Mrs. Borrell.

11. Mrs. Borrell engaged in protected activity within the meaning of Title VII, and the Prince George's County Code.

12. Reinstatement is not feasible for Mrs. Borrell.

## IV.     DAMAGES CLAIMED

1. <u>Back pay:</u> To be determined by the jury

2. <u>Front pay</u>: In an amount to be determined by the jury.

3. <u>Compensatory Damages:</u> These are capped at $300,000.00 under Title VII. They are not capped subject to the Prince George's County Code claim pled in Count 3 of Plaintif-Intervenor's Complaint (the Maryland Court of Special appeals has specifically noted that "in creating the private cause of action that is codified at section 42 [the section applicable to the Prince George's County Code discrimination cause of action] the General Assembly intended that the Maryland common law of damages would apply.") *Shabazz v. Bob Evans Farms, Inc.*, 881 Md. App. 602, 642, 881 A.2d 1212 (Md. Ct. Spec. App. 2005) *cert denied* 390 Md. 92, 887 A.2d 656 (2005))(section 42 has since been re-codified without substantive changes and can be found in the State Government Article of the Maryland Code Annotated).

4. <u>Punitive damages</u>: Similarly to with compensatory damages, punitive damages are capped at $300,000.00 under Title VII, but they are not subject to a cap under the Prince George's County Code. *See Shabazz v. Bob Evans Farms, Inc.*, *supra*.

5. <u>Litigation Fees and Costs</u>: Plaintiff-Intervenor Ora Louise Borrell seeks to recover her reasonable attorney's fees and costs incurred in pursuit of this action. The EEOC seeks to recover court costs incurred in pursuit of this action.

6. <u>Injunctive relief:</u> EEOC seeks injunctive relief including training, reporting, monitoring, and notice posting.

## V. PLAINTIFFS' EXHIBIT LIST[4]

1. Application for Employment – 7/7/04 (D-80 to D-89)

2. Non-Supervisory Performance Appraisal – 11/1/04 (EEOC-534 to EEOC- 538)

3. Non-Supervisory Performance Appraisal – 11/22/04 (EEOC-539 to EEOC-544)

4. Appraisal Form – 12/8/05 (D-21 to D-24)

5. Table of Organization; Aggregate Sand & Gravel Division – October 2008 (D465)

6. Statement of Witness James Durrette – 1/28/08 (EEOC -147 to EEOC-148)

7. Cardinal Rules – Aggregate Industries (Ex. 5 -  Don Delano Deposition)

8. Were SAFETY is a VALUE – Aggregate Industries (Ex. 5 – Don Delano Deposition)

9. Timeline for Termination of Louise Borrell (D-5 to D-6)

10. Aggregate Industries Violation of Work Rules – David Corbet (D-171 to D-173)

---

[4] **Plaintiffs are unable to provide a complete exhibit list because Defendant has not fully supplemented Intervenor's Request for Production No. 24, which calls for documents necessary to establish Defendant's net worth and income. Defendant has only provided documents which are current through 2007 for Aggregate Industries Management, Inc and Aggregate Industries' Mid-Atlantic Region. This is despite Defendant's acknowledgement, in its response to Plaintiff Equal Employment Opportunity Commission's First Set of Interrogatories, Response No. 5, that the entirety of Aggregate's Mid-Atlantic Region is relevant to this litigation. Upon receipt of all responsive documents Plaintiffs will immediately update its exhibit list with the Court.**

11.     Letter to Francis Newman – 11/16/06 (D-143 to D-144)

12.     Termination Letter to Louise Borrell  - No date (D-9 to D-10)

13.      Letter to Louise Borrell – 11/17/06 – "Playful and Flirty" (EEOC-237 – EEOC 238)

14.      Letter to Louise Borrell – 11/17/06 with Handwritten Notes (D-17 to D-18)

15.      Letter to Louise Borrell – 11/17/06 Final (D-15 to D-16)

16.      EEOC Charge of Discrimination No. 531-2007-01179 – 2/21/07 (EEOC-13 EEOC-14)

17.     Written Internal Complaint of Sex Harassment (D-4)

18.     EEOC Determination No. 531-2007-01179 – 2/26/08 (EEOC – 5 to EEOC – 7)

19.     Aggregate Industries Employee Handbook (D-482)

20.     Aggregate Industries Harassment Policy (signed version ) (Ex. 6  Joyce Dussling

        Deposition)

21.     Aggregate Industries Non-Discrimination and Harassment-Free Environment(EEOC – 502 to
            EEOC 504)

22.     Aggregate Industries Harassment Policy (EEOC-81 – EEOC – 82)

23.     Human Resources Status Sheet – 11/17/06 (D-483 – D-484)

24.     Emails Re: Smoking and Rest Rooms – 6/7/05 (EEOC-84 to EEOC-86)

25.     Notice and Demand to Preserve Documents and Electronic Data – 4/24/07

        (Ex. 13 – Norman Buchsbaum Deposition)

26.     Octopus Video – from the Internet (www.octopusgirl.com) (preserved on CD)

27.     Emails Re: Contact Request from Holcim Ltd. 5/23/07 (Ex. 12 – Marilyn Garner

        Deposition)

28.      Emails Re: Unemployment Hearing – Louise Borrell 4/11/07 (Ex. 13 – Marilyn

        Garner Deposition)

29.     Handwritten Notes from James Norris, EEOC Investigator Re: James B. Durrette

        Interview (EEOC-143)

30.     Email from Claude Riffe to J.B. Durrette of January 12, 2007.

31.     Letter to J.B. Durrette from James Norris (EEOC 146)

32.     Notice of Work Rules (Barnes Affidavit Ex. 4)

33.     Email Re: Incident Involving Louise Borrell on Jan. 15, 2007 – 1/16/07  (D-1)

34.     Letter to Donald Delano from Norman Buchsbaum, Esq. – 1/4/07 (AGG – B0026 to AGG – B0028)

35.     Letter to David Gay from Norman Buchsbaum, Esq. – 1/12/07 (AGG – B0029 to AGG – B0032)

36.     DRAFT Termination Letter to David Gay from Norman Buchsbaum, Esq. – 1/12/07 (AGG – B0033 to     AGG – B0035)

37.     Louise Borrell Notes after Termination from Aggregate (EEOC – 455)

38.     Email Drafted by Louise Borrell Re:  "Playful and Flirty Letter" (Placed Telephone Call to Marilyn     Garner instead) (EEOC- 531)

39.     Statement of Earnings and Deductions from Aggregate Industries 4/15/05 (P-05)

40.     2006 W-2 from Bardon, Inc. (P-01)

41.     2007 W-2 from Bardon, Inc. (EEOC – 528)

42.     2007 W-2 from Maxi Mulch, LLC (EEOC – 529)

43.     2007 W-2 from Fenwick Landing, LLC (EEOC – 530)

44.     2007 W-2 from Savage Stone, LLC (EEOC – 532)

45.     2008 W-2 from Savage Stone, LLC (P-02)

46.     2004 W-2 from Florida Rock Industries (EEOC – 533)

47.     2008 W-2 from Hillis-Carnes Engineering Associates (P-03)

48.     2009 W-2 from Hillis-Carnes Engineering Associates (P-06)

49.     2009 W-2 from H&H Bus Service, Inc. (P-06)

50.     2009 Unemployment Form 1099-G (P-07)

51.     Confidentiality Policy (from Employee Handbook) ( D-11)

52.     Email from Jon Brentlinger -  12/27/07 (Ex. 7 to Brentlinger Deposition)

53.     Aggregate Industries Group Electronic Communications Policy – 4/5/06 (CoyVlk-Peterson's     Personnel File)

54.     Hand-drawn Aggregate Industries Table of Organization (Ex. 3 to Dussling Deposition)

55.     Aggregate Industries IT Information Re: Document Retention  (Ex. 2 Kelly Deposition)

56.     Aggregate Industries Summary Income Statement (Ex. 1 Groff Deposition)

57.     Email Re: HR Monthly Activity Report – 4/5/07 (Ex. 17 Gay Deposition)

58.     Email Re: Revised Letter for Louise Borrell – 11/29/06 (Produced 2/4/09)

59.     Sex to Sexty – Cold Cocked? # 104 (comic book) (EEOC 389-454)

60.     Net Loss Compensation Statements (conclusions emailed to Defendant's counsel (Beth Lalik) on 8/24/2010)

61.     Affidavit of Ross Owens (EEOC 149-150)

62.     Standard Specifications for Transportation Materials and Methods of Sampling and Testing (2000) (In the possession of the Defendant).

63.     Email re Termination—1/17/07 (EEOC-240)

64.     List of Aggregate Industries locations (D-546—D-464)

65.     Letter to Louise Borrell—1/25/07 (EEOC 456-457)

66.     Personnel File of Thomas Miller

67.     Personnel File of Francis Leroy Newman

68.     Personnel File of Norman Bowie

69.     Personnel File of Jeffrey Greene

70.     Personnel File of Donald Delano

71.     Personnel File of Gail Slaughter

72.     Personnel File of Jon Brentlinger

73.     Personnel File of Tanya Jenkins

74.     Personnel File of Joyce Dussling

75.     Personnel File of Michael Mascher

76.     Personnel File of David Gay

77.      Personnel File of Joseph Rodgers

78.      Personnel File of Ross Owens

79.     Photographs of Mrs. Borrell's worksite at La Plata

80.     Photographs of Mrs. Borrell at the Fire Rescue Squad Parade (On Mrs. Borrell's hard drive)

81.     Photograph of Mrs. Borrell on the Fire Rescue Squad Float (On Mrs. Borrell's hard drive)

82.     Photograph of Mrs. Borrell at her worksite (On Mrs. Borrell's hard drive)

83.     Poster made by Mrs. Borrell regarding cleanliness (On Mrs. Borrell's hard drive)

84.     Poster made by Mrs. Borrell regarding cleaning supplies (On Mrs. Borrell's hard drive)

85.     Computer entry regarding July 12, 2006 interaction with Tom Miller (On Mrs. Borrell's hard drive)

86.     Computer entry regarding Mrs. Borrell's work ethic (On Mrs. Borrell's hard drive); and

87.     Computer entry regarding hiring of Ross Owens (on Mrs. Borrell's hard drive).

88.     Aggregate Industries Management, Inc. and Subsidiaries Consolidated Financial Statements with Report of Independent Public Accountants. (Ex. 12 to the Deposition of Patrick Groff).

89.     SB & Co. LLC Report of Independent Public Accountants (Ex. 10 to the Deposition of Patrick Groff)

## VI.     PLAINTIFFS' WITNESSES TO BE CALLED[5]

1.  Ora Louise Borrell

2.  Robert Borrell

3.  Terryl Barnes (May be called)

4.  Norman Buchsbaum

5.  Marilyn Garner (May be called)

6.  Ross Owens (May be called)

7.  Lynne Householder (May be called)

8.  Jamie Jones (May be called)

9.  Patrick Groff

10. David Gay (May be called)

11. Al Stone (May be called)

12. Don Delano (May be called)

13. J.B. Durrette

## VII.    PLAINTIFFS' DEPOSITION DESIGNATIONS

Plaintiffs make the following designations:

J. B. Durrette Entire Video Deposition, to include:

1.  p. 9:22 – 12:14

2.  p. 12:19 – 14:3

3.  p. 14:19 – 16:2

4.  p. 16:8 – 17:2

5.  p. 17:11 – 18:5

---

[5] To protect the privacy of witnesses, the parties have agreed to redact the home addresses and telephone numbers of witnesses from the electronically filed version of this document. To comply with Local Rule 106(2)(i), the paper filed copy of this document will contain such information.

6.   p. 18:10 – 20:2

7.   p. 20:9 – 33:14

8.   p. 33:22 – 39:5

9.   p. 41:5 – 44:3

10.  p. 45:6 – 46:7

Norman Buchsbaum Video Deposition:

1.   p. 93:5 – 21

2.   p.  96:3 —  164:16

3.   p. 166: 13 —1 99:11

4.   p. 202:7 – 211:15
5.   p. 214:2 – 223: 11

6.   p. 224:20 – 241:7

7.   p. 242:8 – 252:9

8.   p. 255:8—263:5

9.   p.  264:5—270:14

10.  p. 273:5 – 290:5

11.  p. 290:16 – p.299:8

12.  p. 300:8—300:16

13.  p. 304:21—305: 12

14.  p. 305:19- 325:4

15.  p. 325: 13 – 332: 2

16.  p. 332: 20 –367: 10

17.  368:2 –379:14

<u>Terry Barnes Deposition</u>

1. p. 31:13 – 31:15
2. p. 40:8 – 40:18
3. p. 58:20 – 58:22
4. p. 107:18 – 107:21
5. p. 109:8 – 110:7
6. p. 116:1 – 116:10
7. p. 120:11 – 120:18
8. p. 122:8 – 123:5
9. p. 124:11 – 125:17
10. p. 127:11 – 130:1
11. p. 130:19 – 131:22
12. p. 132:6 – 133:5
13. p. 133:6 – 134:6
14. p. 135:16 – 136:12
15. p. 137:5 – 137:7
16. p. 139:14 – 142:4
17. p. 142:21 – 143:14
18. p. 145:1 – 145:20
19. p. 148:4 – 150:18
20. p. 154:9 – 155:1
21. p. 159:13 – 160:11
22. p. 166:10 – 168:3
23. p. 172:2 – 177:3
24. p. 178:19 – 182:11
25. p. 182:16 – 183:1
26. p. 183:20 – 184:6

27. p. 187:10 – 188:5

28. p. 189:14 – 191:9

29. p. 191:12 – 192:1

30. p. 192:11 – 193:7

31. p. 197:2 – 198:8

32. p. 201:9 – 201:18

33. p. 204:1 – 204:9

34. p. 204:14 – 205:20

35. p. 205:21 – 207:1

36. p. 207:13 – 208:19

37. p. 210:16 – 211:10

38. p. 213:18 – 215:13

39. p. 215:14 – 217:7

40. p. 217:8 – 219:17

41. p. 219:19 – 221:10

42. p. 221:11 – 222:16

43. p. 222:17 – 223:20

44. p. 223:21 – 225:22

45. p. 226:20 – 227:4

46. p. 228:4 – 229:14

47. p. 229:22 – 235:16

48. p. 235:18 – 241:13

49. p. 241:15 – 242:3

50. p. 242:8 – 244:11

51. p. 244:13 – 245:16

52. p. 246:14 – 249:22

53. p. 250:4 – 253:20

54. p. 253:21 – 256:14

55. p. 256:17 – 258:17

56. p. 258:19 – 260:18

57. p. 260:20 – 261:21

58. p. 262:13 – 263:10

59. p. 264:4 – 264:20

60. p. 265:1 – 267:9

61. p. 267:11 – 269:15

62. p. 269:17 – 272:4

63. p. 272:6 – 272:21

64. p. 273:11 – 274:20

65. p. 274:22 – 276:1

66. p. 276:19 – 277:13

67. p. 278:10 – 280:13

68. p. 280:14 – 282:15

69. p. 283:3 – 284:21

70. p. 284:22 – 286:9

71. p. 287:3 – 289:17

72. p. 289:19 – 291:5

73. p. 291:6 – 291:16

74. p. 293:13 – 294:15

75. p. 295:9 – 298:4

76. p. 298:6 – 300:17

77. p. 300:18 – 302:1

78. p. 302:12 – 303:22

79. p. 304:14 – 305:12

80. p. 305:18 – 307:7

81. p. 307:15 – 308:18

82. p. 308:19 – 309:3

83. p. 309:20 – 310:3

84. p. 310:7 – 311:5

85. p. 311:7 – 317:8

86. p. 317:22 – 318:4

87. p. 318:6 – 319:21

88. p. 320:4 – 323:5

89. p. 323:16 – 324:4

90. p. 324:7 – 326:5

91. p. 326:7 – 327:11

92. p. 327:13 – 328:8

93. p. 328:21 – 330:4

94. p. 331:8 – 331:21

95. p. 332:1 – 333:18

96. p. 333:20 – 335:4

97. p. 335:8 – 337:1

98. p. 337:9 – 337:12

99. p. 337:13 – 338:3

100.        p. 338:5 – 341:4

101.        p. 352:8 – 353:2

102.        p. 353:12 – 354:16

103.        p. 354:18 – 357:1

104.        p. 357:3 – 357:9

Marilyn Garner Entire Deposition, to include:

1. p. 25-26
2. p. 31-33
3. p. 36
4. p. 46-47
5. p. 51-52
6. p. 55-56
7. p. 79-81
8. p. 83
9. p. 92
10. p. 120-122
11. p. 133
12. p. 177-178

Michael Mascher Video Deposition[6]:

1. p. 13:6-17:18
2. p. 22:17-23:16
3. p. 27:11-30:14
4. p. 29:12-30:14
5. p. 33:16-36:22
6. p. 38:6-39:14
7. p. 39:25-41:3
8. p. 57:4-12

---

[6] Plaintiffs object to the introduction of all portions of the video depositions which contain hearsay within them. Plaintiffs received Defendant's video deposition designations approximately 24 hours ago and are in the process of identifying inadmissible hearsay within these designations. Plaintiffs were unable to raise the hearsay issue through a motion in limine because they did not receive Defendant's witness list or deposition designations until after the motions in limine deadline. Plaintiff will shortly file objections with the Court regarding inadmissible hearsay within Mr. Mascher's and Mr. Miller's video deposition testimony.

9.   p. 58:3-7

10.  p. 70:12-21

11.  p. 203:6-12

12.  207:14-21

13.  213: 3-16

14.  214:9-215:7


Tom Miller Video Deposition:

1.   p. 14:9 – 17:5

2.   p. 19:3 – 20:20

3.   p. 21: 8-17

4.   p. 22: 7- 22

5.   p. 23: 1-22

6.   p. 28: 13 – 33:22

7.   p. 34:8 – 35:8

8.   p. 36:1 – 37:1

9.   p. 37:4 – 38:6

10. p. 39:3 – 5

11. p. 41:16 – 45:6

12. p. 47:14 – 21

13. p. 50:12 – 51:22

14. p. 52:21 – 57:6

15. p. 57:8 – 58:6

16. p. 58:9 – 59:2

17. p. 59:17 – 61:14

18. p. 66:20 – 68:13

19. p. 73:19 – 76:4

20. p. 77:1 – 78:16

21. p. 87:10 – 91:6

22. p. 91:20 – 93:2

23. p. 93:17 – 95:4

24. p. 98:12 – 99:7

25. p. 99:12 – 100:2

26. p. 101:4 – 102:14

27. p. 102:16 – 103:17

28. p. 104:17 – 106:9

29. p. 107:16 – 108:17

30. p. 110:20 – 111:20

31. p. 112:22 – 113:11

32. p. 114:19 – 115:14

33. p. 117:15 – 17

34. p. 118: 1-8

35. p. 119: 9 – 17

36. p. 120:3 – 121:12

37. p. 121:13 – 122:7

38. p. 122:14 – 124:1

39. p. 126:21 – 127:5

40. p. 128:4 – 129:22

41. p. 131:3 – 133:1

42. 133:3 – 134:12

43. p. 135:19 – 136:18

44. p. 137:5 – 17

45. p. 139:9 – 141:12

46. p. 142:12 – 21

47. p. 144:3 – 16

48. p. 147:21 – 151:7

49. p. 156:11 – 157:1

50. p. 157:21 – 159:6

51. p. 160:10 – 162:1

52. p. 162:20 – 164:20

53. p. 167:8 – 19

54. p. 170:20 – 171:13

55. p. 174:9 – 17

56. p. 194:7 – 195:4

57. p. 198:18 – 199:4

58. p. 199:6 – 200:6

59. p. 205:22 – 208:16

60. p. 221:21 – 222:17

61. p. 230:15 – 231:10

62. p. 234:1 – 236:16

63. p. 241:10 – 22

64. p. 276:11 – 278:7

65. p. 278:8 – 279:15

66. p. 286:16 – 287:1

67. p. 288:6 – 18

68. p. 311:7 – 17

69. p. 318:1 - 7

### VIII.   OTHER MATTERS

1.   Plaintiff-Intervenor's Objections to Magistrate Judge Charles B. Day's Letter Order Dated August 19, 2010 is currently before the Court.

2.   Plaintiffs object to Defendant's use of the defense of advice of counsel at this stage of the litigation. The advice of counsel defense is an affirmative defense, one which Defendant did not raise until the pretrial order. Moreover, raising the advice of counsel defense invalidates all claims of attorney-client privilege. Because Defendant did not raise this defense until the draft pretrial order, Plaintiffs could not inquire into aspects of Mr. Buchsbaum's representation which otherwise would be covered by the attorney-client privilege.

3.   Plaintiffs do not agree with Defendant that failure to mitigate is not an affirmative defense. See p. 30-31 of the pretrial order.

4.   Plaintiffs object to Defendant's stipulation of fact No. 1.

5.   The Parties have filed extensive motions in limine.


### IX.   DEFENDANT'S BRIEF STATEMENT OF THE FACTS

Defendant Bardon, Inc. (also called "Aggregate") provides aggregate-based materials to customers in the mid-Atlantic region.  Aggregate hired Plaintiff-Intervenor Ora Louise Borrell in July 2004 as a Quality Control Technician at Aggregate's facility in LaPlata, Maryland.

With respect to Ms. Borrell's claim of sexual harassment, the evidence shows that Aggregate responded immediately and appropriately to the complaints Ms. Borrell made during her employment, and

that Ms. Borrell never brought to Aggregate's attention certain of the events about which she now complains.  Moreover, Ms. Borrell's own inappropriate conduct at work – including her regular transmittal of sexually vulgar e-mails and jokes to co-workers – defeats her harassment claim, since it makes clear that the conduct about which she complains was simply not unwelcome to her.

As for Ms. Borrell's complaints, Aggregate took action:

- In 2004, Ms. Borrell complained to Plant Manager Tom Miller and Transportation Manager/Safety Coordinator Sherman Owens that despite the bathroom facilities already available to them, she had observed male truck drivers (who were not Aggregate employees) urinating outside their trucks in the "yard" of the LaPlata facility.  The very next day after her complaint, Aggregate placed extra portable toilets at the facility and posted signs instructing truck drivers to use them.  Aggregate managers also called the third party trucking firms whose drivers Ms. Borrell had allegedly seen urinating to notify them of the problem and demand that it stop.  One truck driver offered to apologize to Ms. Borrell.  Ms. Borrell never complained about the issue again.

- Ms. Borrell alleges that while at the LaPlata facility speaking with Mr. Miller and other female co-workers in his office, Mr. Miller followed a female co-worker's request that he open up an e-mail she had sent him.  The e-mail contained a video of a woman "giving birth" to an octopus, which the group viewed.  Although fully able to leave Mr. Miller's office at any time, Ms. Borrell never attempted to leave.  Moreover, Ms. Borrell concedes that she never complained to anyone in Human Resources or management about the video other than to say to Mr. Miller, "Y'all are sick, that is nasty."

- Ms. Borrell complained about the allegedly dirty conditions of the restrooms at the Acton Lane facility in Waldorf, Maryland.  She sent an email to Marilyn Garner with Human

Resources complaining that male employees used the restroom at the Acton Lane facility as a "smoking room, trash room." Nowhere in her email did she allege that there was any pornography in the restroom.[7] Ms. Garner responded to Ms. Borrell's email an hour later informing her that she had already elevated the issue to the Vice President of Human Resources and the Manager of Safety. Ms. Borrell also complained to Mr. Miller about the condition of the restrooms. Again, Ms. Borrell never mentioned anything to him about pornography. Aggregate responded to Ms. Borrell's complaints promptly by placing a lock on one of the two bathrooms at the facility, and providing Ms. Borrell with a key so she would have private access to the restroom. Ms. Garner followed up with Ms. Borrell, who never indicated that she had any further problems with the restrooms. Ms. Borrell never voiced any further concerns about the restroom conditions.

Thus, the evidence shows that Aggregate took Ms. Borrell's complaints seriously and took prompt and appropriate action to alleviate her concerns.

Furthermore, Ms. Borrell's own inappropriate conduct demonstrates that she did not find the conduct about which she now complains to be unwelcome. Ms. Borrell willingly and regularly participated in exchanges of off-color jokes. The documents show unequivocally that she regularly sent her co-workers e-mails with vulgar and sexually-graphic images, as well as sexually-charged jokes. Ms. Borrell was flirtatious with her co-workers: she admittedly pinched a supervisor on the buttocks, asked a co-worker if he "wanted some leg," sprayed her perfume into a truck used by co-worker, and made sexual noises over the CB radio while in a truck with a male co-worker.

---

[7] When Ms. Borrell complained to her supervisor, Mr. Jeffry Greene, about the condition of the bathrooms, she did mention that she had seen pornographic magazines there. Mr. Greene accompanied Ms. Borrell to view the condition of the restrooms, but he did not see any pornographic magazines of any sort, and never saw such material at Aggregate. Ms. Borrell never told anyone in Human Resources that she had seen pornography in the restrooms.

Aggregate also intends to prove that it handled Ms. Borrell's November 2006 internal complaint of sexual harassment complaint in a fair and proper manner, and completely remedied the situation about which Ms. Borrell complained.   On November 14, 2006, Ms. Borrell provided Michael Mascher, Area Operations Manager, with a written complaint alleging that over the course of just three or four exchanges with him, a co-worker named Francis "Leroy" Newman touched her buttocks and made inappropriate comments toward her.  Ms. Borrell told Mr. Mascher that she did not want Mr. Newman to lose his job, and she did not want the complaint to be taken higher up within the company;  she just wanted Mr. Newman's alleged conduct to stop.  She had expressed the very same sentiments to her supervisor, Mr. Jeffry Greene, the evening before.  Messrs. Greene and Mascher took Ms. Borrell's complaint very seriously.  Mr. Mascher immediately sent Ms. Borrell's write-up to Ms. Garner in Human Resources.

Ms. Terryl Barnes of Human Resources began her investigation promptly – the very next day – and interviewed Mr. Newman and a witness Ms. Borrell identified, Mr. Stacy Shanklin, on November 15, 2006.[8] Mr. Newman and Mr. Shanklin reported that during the handful of times during which Mr. Newman and Ms. Borrell had interacted, Ms. Borrell regularly participated in "trash talk" and sexual banter with Mr. Newman, and Mr. Newman stated that he thought he had a fun and joking relationship with Ms. Borrell. Ms. Barnes sent Mr. Newman a warning letter indicating that his behavior was inappropriate and would not be tolerated by the Company.  The letter directed Mr. Newman to immediately cease all comments with sexual overtures, inappropriate jokes and gestures, or further disciplinary action would result.  Mr. Newman was placed on lay-off status the next day for business reasons, and so there was no risk of any further problematic behavior.

---

[8] For the very first time in this litigation, Ms. Borrell appears to allege in her "Brief Statement of Facts" that Mr. Shanklin made sexual advances to Ms. Borrell.  (*See* Plaintiffs' Joint Pretrial Order at p. 4).  Ms. Borrell never made such an allegation during her employment, during the EEOC's investigation, or at any time during the instant litigation.   Furthermore, there is absolutely no evidence supporting this brand new allegation.

On Friday, November 17, Ms. Barnes met with Ms. Borrell to discuss the outcome of her investigation. Ms. Barnes told Ms. Borrell that she sent a warning letter to Mr. Newman forbidding his conduct, but that he was laid off, so she would no longer have to interact with him in any way. Ms. Barnes also confirmed that Ms. Borrell followed the proper procedure when she provided the Company with her complaint, and confirmed to Ms. Borrell that Aggregate has a no-tolerance policy for harassment of any kind. Ms. Barnes suggested that Ms. Borrell be careful not to make comments with sexual overtones herself because such conduct could result in misunderstandings amongst her co-workers about what conduct she was comfortable with and what conduct she was not uncomfortable with. Ms. Barnes provided Ms. Borrell with a letter summarizing the investigation and results. Ms. Borrell responded that she was fine with the outcome because she did not want Mr. Newman to get into trouble, she just wanted him to stop the overtures she perceived.

On Monday, November 20, Ms. Borrell called Ms. Garner and said that after considering it over the weekend, she had concerns about certain points in the letter given to her. Specifically, she reported that she was unhappy with some of the phrasing in the letter and she asked that certain words be removed and that other portions of the letter be revised slightly. Ms. Barnes called Ms. Borrell to discuss her concerns and ultimately made the changes requested by Ms. Borrell. Ms. Barnes sent Ms. Borrell the revised letter. Ms. Borrell never voiced any other complaints about the investigation or the letter given to her, to anyone in Aggregate's management or HR. Aggregate believed the matter was resolved.

Aggregate will also prove at trial that it terminated Ms. Borrell's employment for a legitimate, non-retaliatory reason. Ms. Borrell demonstrated a remarkable lack of judgment and concern for the Company's business interests when she admittedly gossiped with a state inspector – who had the ability to shut down a considerable portion of the Company's business – about her harassment complaint and her dislike of the Company's investigation into and reaction to her complaint.

28

In early December, Aggregate learned that while Ms. Borrell was out in the field collecting material samples with a Virginia Department of Transportation ("VDOT") Inspector, J.B. Durrette, she told him that she had filed a sexual harassment complaint with Aggregate and that she was unhappy with how the Company had handled her complaint.  Mr. Durrette told a number of Aggregate employees that he was uncomfortable being alone with Ms. Borrell and that he felt compelled to bring a second VDOT employee with him when he came to get samples.  Aggregate became immediately concerned that Ms. Borrell made Mr. Durrette uncomfortable and put the Company in a tenuous position, by gossiping about such sensitive information with a VDOT Inspector, who is charged with testing samples of Aggregate's product in order to certify their use for certain government funded projects.  As a result, Aggregate asked its outside counsel to investigate the matter.  Counsel's investigation corroborated the allegations.

On January 12, 2007, members of Aggregate's Human Resources and management and their outside counsel met with Ms. Borrell to discuss the allegations and to get her side of the story.  Ms. Borrell conceded that she told Mr. Durrette about her harassment complaint and her unhappiness with how the Company handled the complaint.  She also reported to the group that during her ride with Mr. Durrette, she told him that one of his state inspector colleagues frequently asked for a free lunch, and that it was wrong to be buying lunch for inspectors under those circumstances.  Ms. Borrell showed absolutely no understanding of or concern for the repercussions of her conduct.  The Company's officials discussed with outside counsel the investigation and Ms. Borrell's response, including her complete lack of concern.  Given that an important part of Ms. Borrell's job was to use discretion in her dealings with outside agents, which she had utterly failed to do, and in light of the fact that Ms. Borrell offered no indication that she would act differently in the future, Ms. Borrell's manager ultimately decided that termination of her employment was appropriate.

## X.   DEFENDANT'S LEGAL THEORIES IN SUPPORT OF ITS AFFIRMATIVE DEFENSES[9]

1.     Ms. Borrell's claim for punitive damages is barred because any alleged actions taken by Aggregate do not show evidence of malice or reckless disregard with respect to the federally protected rights of Ms. Borrell, nor did Aggregate intentionally deny or interfere with any such rights.

- Aggregate responded promptly to Ms. Borrell's complaints of dirty restrooms and truck drivers urinating outside by taking quick action to resolve the issues.

- Aggregate conducted an immediate investigation into Ms. Borrell's internal complaint of sexual harassment concerning Mr. Newman.

- Aggregate laid off the alleged harasser, which ensured that Ms. Borrell would no longer have any contact with him.

- Aggregate willingly revised some of the language contained in Ms. Barnes' letter to Ms. Borrell describing the outcome of the harassment investigation.

- Aggregate believed Ms. Borrell's internal sexual harassment complaint had been resolved to the satisfaction of all parties.

- Aggregate did not in any way base its decision to terminate Ms. Borrell's employment on her prior internal sexual harassment complaint.

- Aggregate assigned its outside counsel to conduct a thorough investigation to determine whether Ms. Borrell had inappropriately disclosed confidential and sensitive information to a VDOT inspector.

---

[9] Aggregate also intends to pursue other defenses, including failure to mitigate, that are not "affirmative defenses" under Federal Rule 8(c).

2.      Punitive damages are barred because Aggregated acted reasonably and in good faith in its efforts to comply with federal and state employment laws, and it acted on the advice of counsel in terminating Ms. Borrell's employment.

- In deciding to terminate Ms. Borrell's employment, Aggregate relied on the advice of its counsel that terminating Ms. Borrell for disclosing sensitive Company information to a VDOT inspector in no way violated Ms. Borrell's federally or state protected rights.

## XI.     ISSUES IN THE PLEADINGS TO BE ABANDONED

This Court granted summary judgment to Defendant on Plaintiff-Intervenor's claim for Negligent Supervision (Count IV of Plaintiff-Intervenor's Complaint) and Assault and Battery (Count V of Plaintiff-Intevernor's Complaint).

## XII.    DEFENDANT'S STIPULATIONS OF FACT

Defendant agrees to stipulate to the following facts:

1.      The video found at www.octopusgirl.com is the video that Ms. Lisa McGuire forwarded to Mr. Tom Miller (and others) by e-mail.

2.      For the purposes of Title VII of the Civil Rights Act of 1964, Defendant employed more than 500 employees in each of 20 or more calendar weeks in 2006 and 2007.

3.      Aggregate terminated Ms. Borrell's employment on January 12, 2007.

4.      Reinstatement is not feasible for Ms. Borrell.

31

### XIII.    DEFENDANT'S EXHIBIT LIST

Please see attached Exhibit List

### XIV.    DEFENDANT'S WITNESS LIST[10]

1.      Ms. Terryl Barnes

2.      **Ms. Ora Louise Borrell**

3.      **Mr. Norman Bowie**

4.      **Norman Buchsbaum, Esq.**

5.      Mr. Jon Brentlinger

6.      Ms. Marilyn Garner

7.      Mr. Jeffry Greene

8.      Ms. Tonya Jenkins

9.      Mr. Michael Mascher (by video deposition, see below)

10.     Mr. Thomas Miller (by video deposition, see below)

11.     Ms. Gail Slaughter

12.     Mr. Stacy Shanklin

13.     Mr. Don Delano  (May call if need arises)

14.     Ms. Joyce Dussling  (May call if need arises)

13.     Mr. Sherman Owens (May call if need arises)

---

[10] To protect the privacy of witnesses, the parties have agreed to redact the home addresses and telephone numbers of witnesses from the electronically filed version of this document. To comply with Local Rule 106(2)(i), the paper filed copy of this document will contain such information.

32

## XV.     DEFENDANT'S DEPOSITION TESTIMONY TO BE OFFERED[11]

1.     Video Deposition Testimony of Mr. Michael Mascher:

| | | | |
|---|---|---|---|
| 23:13-16 | 72:22-75:1 | 199:17-200:14 | 247:1-5 |
| 24:9-12 | 76:12-78:2 | 202:10-13 | 247:13-19 |
| 27:15-21 | 83:3-6 | 203:13-204:8 | 248:6-249:9 |
| 28:12-32:5 | 85:1-8 | 205:12-207:13 | 250:7-19 |
| 33:8-36:22 | 87:21-88:8 | 207:22-208:14 | |
| 38:6-39:14 | 90:19-92:19 | 210:5-12 | |
| 39:9-14 | 94:7-96:19 | 213:4-16 | |
| 41:20-42:4 | 121:6-122:2 | 213:22-214:8 | |
| 42:12-44:5 | 139:1-5 | 215:8-216:1 | |
| 44:10-46:12 | 168:8 – 169:10 | 240:1-13 | |
| 49:12-51:7 | 172:2 – 5 | 240:14-241:5 | |
| 51:22-52:10 | 173:10-174:18 | 241:21-242:20 | |
| 52:15-53:18 | 175:11-176:3 | 243:1-13 | |
| 54:19-56:20 | 177:7-17 | 244:3-10 | |
| 66:1-14 | 183:15-185:3 | 244:16 -245:13 | |

2.     Video Deposition Testimony of Mr. Thomas Miller

| | | |
|---|---|---|
| 18:17-19:2 | 90:9-91:14 | 175:21-176:1 |
| 30:13-31:7 | 94:17-95:4 | 176:3-13 |
| 33:7-20 | 95:20-97:7 | 222:19-224:13 |
| 34:8-11 | 103:5-16 | 225:1-227:19 |
| 37:4-18 | 119:19-120:1 | 230:3-14 |
| 38:12-39:2 | 133:13-21 | 232:17-233:8 |
| 39:18-40:6 | 134:10-135:1 | 283:19-284:20 |
| 78:14-16 | 137:19-22 | 286:16-289:5 |
| 79:14-18 | 139:9-141:12 | 296:11-297:19 |
| 80:7-15 | 174:9-17 | 298:4-19 |
| 81:19-82:2 | | 302:14-22 |

---

[11] Defendant has not identified deposition testimony to be offered for impeachment purposes only.

| | | |
|---|---|---|
| 84:19-85:14<br>86:6-14<br>87:15-88:15 | | 306:15-22<br>307:12-20 |

XVI.    DEFENDANT'S EXHIBIT LIST

| Trial Exhibit No. | Description |
| --- | --- |
| 1 | Non-Discrimination and Harassment-Free Environment Policy [EEOC 502-504] |
| 2 | Norman Lee Bowie's Receipt of Company's Harassment Policy |
| 3 | Norman Lee Bowie's Acknowledgment of Code of Ethics and Employee Conduct Policy |
| 4 | Aggregate's Confidentiality Policy |
| 5 | Aggregate's Harassment Policy [Exh. 6 to J. Dussling Deposition] |
| 6 | Termination letter to Louise Borrell |
| 7 | Joyce Dussling's Receipt of the Company's Harassment Policy, dated 8/25/98 |
| 8 | Roger Kalaha's Receipt of Company's Harassment Policy, dated 8/25/98 |
| 9 | Jeffry Greene's Receipt of Company's Harassment Policy, dated 6/15/01 |

| | |
|---|---|
| 10 | Jon Brentlinger's Acknowledgment of Code of Ethics and Employee Conduct Policy, dated 8/8/01 |
| 11 | Jon Brentlinger's Receipt of Company's Harassment Policy, dated 8/8/01 |
| 12 | Carl Joseph Rodgers' Receipt of Company's Harassment Policy, dated 1/04/02 |
| 13 | Carl Joseph Rodgers' Acknowledgment of Code of Ethics and Employee Conduct Policy, dated 1/04/02 |
| 14 | Gail Slaughter's Receipt of Company's Harassment Policy, dated 1/04/02 |
| 15 | Gail Slaughter's Acknowledgment of Code of Ethics and Employee Conduct Policy dated 1/04/02 |
| 16 | Thomas Miller's Receipt of Company's Harassment Policy dated 1/07/02 |
| 17 | Thomas Miller's Acknowledgment of Code of Ethics and Employee Conduct Policy dated 1/07/02 |
| 18 | Tonya Jenkins' Receipt of Company's Harassment Policy dated 10/03/02 |

| 19 | Stacy Shanklin's Receipt of Company's Harassment Policy dated 10/03/02 |
|---|---|
| 20 | Francis Newman's Receipt of Company's Harassment Policy dated 10/3/02 |
| 21 | Thomas Miller's Receipt of Company's Harassment Policy dated 10/29/02 |
| 22 | Carl J. Rodgers' Receipt of Company's Harassment Policy dated 10/29/02 |
| 23 | Gail Slaughter's Receipt of Company's Harassment Policy dated 10/29/02 |
| 24 | Ora Louise Borrell's Application for Employment, dated 7/7/04 |
| 25 | Ora Louise Borrell's Employee Policies & Work Rules Acknowledgement, dated 7/26/04, including the corresponding policies (EEO Policy, Harassment Policy, Code of Conduct & Ethics Policy, Gratuities, Confidentiality Policy, Notice of Work Rules) |
| 26 | Offer of employment letter to Ora L. Borrell, dated 7/26/04 |
| 27 | Non-Supervisory Performance Appraisal of Ora L. Borrell, dated 11/1/04 |
| 28 | Sign in Sheets for 2004 New Hire Presentation materials on Harassment and corresponding HR Employee Orientation presentation, dated 3/1/04 |

| 29 | Sign in Sheet for January 25, 2006 and Anti-Harassment training materials dated October 2005 |
|----|----------------------------------------------------------------------------------------------------|
| 30 | Letter from R. Mergens to Ora Borrell dated January 2005 |
| 31 | Sign in Sheets for 2005 Employee meeting Presentation materials on Harassment, dated 2/10/05 |
| 32 | Sign in Sheets for February 2005 Awareness Day Training at LaPlata, Gas Light/Accokeek, King George, Greenblet, and Rappahanock and the corresponding training materials |
| 33 | Jeffry Greene's Receipt of Employee Handbook, dated 4/18/05 |
| 34 | Michael Mascher's Receipt of Employee Handbook dated 5/23/05 |
| 35 | Email chain from D. Gay to J. Veneskey, J. Greene, M. Garner and L. Borrell  re: Smoking and rest rooms, dated 6/9/05 |
| 36 | Ora Louise Borrell's Receipt of Employee Handbook, dated 10/19/05 |
| 37 | Email chain from D. Gay to M. Garner re: smoking and restrooms, dated 6/7/05 |
| 38 | Gail Slaughter's Receipt of Employee Handbook dated 11/28/05 |
| 39 | Ora Borrell's Appraisal Form dated 12/08/05 |

| 40 | Aggregate's New Hire Orientation presentation |
|---|---|
| 41 | Sign in Sheets for 2006 Employee Training Presentation materials on Harassment, dated 1/25/06 and corresponding training materials |
| 42 | Oral Louise Borrell's Acknowledgement of Non-Discrimination and Harassment-Free Environment Policy, dated 1/25/06 |
| 43 | Email from L. McGuire to G. Slaughter, L. Borrell, R. Davis and S. Windsor re: Something To make you smile, dated 5/8/06 |
| 44 | Email[12] from L. McGuire to G. Slaughter and L. Borrell re: Voted best short joke of 2005, dated 5/9/06 |
| 45 | Email from L. McGuire to G. Slaughter, L. Borrell, R. Davis, R. Payne, S.Windsor, B. Monika and C. Bennett re: gotta love this one, dated 5/11/06 |
| 46 | Email from G. Slaughter to L. Borrell re: Lola Dazzlehooter, dated 5/23/06 |
| 47 | Electronic version[13] of email from L. Borrell to R. Owens re: Big Deck, dated 7/28/06 |
| 48 | Electronic version of email from L. Borrell to R. Owens re: Die-vorce (Not for real life practice), dated 8/15/06 |

[12] Aggregate's identification of an email on its Exhibit List includes the identification of any attachments to the email.
[13] Aggregate reserves the right to offer hard copies of any of the emails it designates as offering in electronic format.

| 49 | Electronic version of email from L. Borrell to R. Owens re: Grandmotherly advice, dated 8/18/06 |
|----|---|
| 50 | Electronic version of email from L. Borrell to Ross Owens re: blackboarddrawing.pps, dated 8/18/06 |
| 51 | Email from L. Borrell to D. Jarvis re: Hiring, dated 8/21/06 |
| 52 | Electronic version of email from L. Borrell to S. Carr, M. Carr, J. Greene, I. Kumar, C. Bullis, C. McCoy, and G. Slaughter re: Pop In!!!, dated 8/22/06 |
| 53 | Email from L. Borrell to D. Jarvis re: JOB, dated 8/28/06 |
| 54 | Electronic version of email from L. Borrell to R. Owens, M. Carr, S. Carr, D. Love, C. McCoy and C. Bullis re: Vaseline, dated 9/6/06 |
| 55 | Email from L. Borrell to M. Garner re: Job, dated 9/7/06 |
| 56 | Email from L. Borrell to oralouise@hughes.net  re: no subject, dated 9/12/06 |
| 57 | Electronic version of email from L. Borrell to jamiej02201976@aol.com  re: Children's books you will not find in the store – This is a MUST read!..., dated 9/15/06 |
| 58 | Electronic version of email from L. Borrell to G. Slaughter, D. Love, C. McCoy, S. Carr, I. Kumar re: childrens books!!!, dated 9/25/06 |

| 59 | Electronic version of email from L. Borrell to J. Greene re: "Hayfield", dated 10/6/06 |
| 60 | Electronic version of email from L. Borrell to R. Owens re: The first sign you're gay!, dated 10/16/06 |
| 61 | Electronic version of email from L. Borrell to R. Owens, C. McCoy, D. Love, J. Greene re: "ELMO", dated 10/20/06 |
| 62 | Electronic version of email from L. Borrell to R. Owens, C. McCoy, D. Love and Craftydm@aol.com, dated 11/9/06 |
| 63 | Electronic version of email from L. Borrell to R. Owens to L. Borrell re: Are you ready???, dated 11/11/06 |
| 64 | Electronic version of email from L. Borrell to R. Owens, Jamiej02201976@aol.com, D. Love and C. McCoy re: How a woman's brain works, dated 11/13/06 |
| 65 | Electronic version of email from R. Owens to L. Borrell re: tattooed granny – unbelievable, dated 11/13/06 |
| 66 | Electronic version of email from L. Borrell to C. Cole re: How a woman's brain works, dated 11/16/06 |
| 67 | Electronic version of email from R. Owens to L. Borrell, no subject, dated 11/28/06 |
| 68 | Letter from Terry Barnes to Francis Newman dated 11/15/206 |
| 69 | Letter from Terry Barnes to Francis Newman dated 11/16/06 |
| 70 | Status Sheet dated 11/17/06 |
| 71 | Letter to Louise Borrell dated 11/17/06 |

| | |
|---|---|
| 72 | Email from T. Barnes to D. Gay and N. Buchsbaum re: Revised letter for Louise Borrell, dated 11/29/06 |
| 73 | Electronic version of email from L. Borrell to M. Carr, Sharon Carr, and J. Rodgers re: ITALIAN CLASSIC ENGLISH [with sound], dated 12/4/06 |
| 74 | Email from M. Garner to D. Gay, D. Delano and T. Barnes re: harassment training, dated 12/11/06 |
| 75 | Email from J. Greene to Louise Borrell re: Training Session, dated 12/13/06 |
| 76 | Electronic version of email from L. Borrell to S. Carr, M. Carr, Craftydm@aol.com and Jamiej02201976@aol.com, and L. Borrell re: This is for you Girls.............], dated 12/20/06 |
| 77 | Electronic version of email from L. Borrell to M. Carr, S. Carr, C. McCoy, and D. Love re: My ChristmasCard.pps, dated 12/20/06 |
| 78 | Electronic version of email from L. Borrell to Craftydm@aol.com, R. Owens, and jamiej02201976@aol.com re: Trees in Florida, dated 1/2/07 |
| 79 | Electronic version of email from L. Borrell to R. Sundberg re: parkinkorea, dated 1/9/07 |
| 80 | Ora Borrell's 2006 W-2 and Earnings Summary [P-01] |
| 81 | Electronic version of email from L. Borrell to R. Sundberg re: TempFairysex.pps, dated 1/8/07 |
| 82 | Electronic version of email from L. Borrell to R. Owens, R. Sundberg and C. Smith re: Warning about Red Lobster, dated 1/11/07 |
| 83 | Electronic version of email from L. Borrell to Crystal Smith re: email, dated 1/11/07 |

| 84 | Email from T. Barnes to M. Garner re: Status Report, dated 1/12/07 |
|----|---|
| 85 | Letter from N. Buchsbaum to D. Gay, dated 1/12/07 [AGG-B0029-32] |
| 86 | Email from S. Yost to D. Gay re: January Report, dated 2/7/07 |
| 87 | Office of Unemployment Insurance Fact Finding Report dated 2/1/07 [EEOC-511 – 513] |
| 88 | Office of Unemployment Insurance Notice of Benefit Determination dated 2/22/07 [EEOC-510] |
| 89 | Violation of Work Rules re D. Corbett, dated 3/9/07 |
| 90 | Email from R. Owens to J. Durrette re: Louise Borrell, dated 4/14/2007 |
| 91 | Letter from J. Minter to D. Corbett, dated 5/10/07 |
| 92 | Statement by T. Kiser to T. Barnes, dated 5/10/07 |
| 93 | Personnel Change Notification for D. Corbett, dated 5/15/07 |
| 94 | Personnel Change Notification for L. Borrell, dated 7/22/07 |

| 95 | Ora Borrell's 2007 W-2, Earnings Summary, Wage and Tax Statement [EEOC-28-530, 532] |
|---|---|
| 96 | Ora Borrell's 2008 W-2 Wage and Tax Statement [P-02 – P-03] |
| 97 | Hire Notification form from Hillis-Carnes, dated 6/28/08 |
| 98 | Ora Borrell's Emergency Contact Form for Hillis-Carnes |
| 99 | Ora Borrell's Benefits Eligibility Checklist for Hillis-Carnes, dated 9/1/08 |
| 100 | Ora Borrell's 2008 Benefits Enrollment Form for Hillis-Carnes, dated 9/2/08 |
| 101 | Ora Borrell's Payroll Adjustment Notice from Hillis-Carnes, dated 9/4/08 |
| 102 | Email from I. Hawarry to B. Frank re: Ora Louise Borrell, dated 10/06/08 |
| 103 | Plaintiff EEOC's Answers and Objections to Defendant's First set of Interrogatories dated 10/28/08 |
| 104 | Division for Unemployment Insurance Request for Separation Information from Hillis-Carnes, dated 2/9/09 |
| 105 | Intervenor Ora Louise Borrell's Reponses to Defendant's Requests for Admissions from Intervenor dated 4/13/09 |

| 106 | Intervenor Ora Louise Borrell's Amended Responses to Defendant's Requests for Admissions dated 8/24/09 |
| 107 | Ora Borrell's 2009 W-2 Wage and Tax Statement  [P-06] |
| 108 | Ora Borrell's Form 1099-G  [P-07] |
| 109 | Plaintiff EEOC's First Supplemental Answers and Objections to Defendant's First Set of Interrogatories dated, 6/21/10 |
| 110 | Fax cover sheet from B. Hill to E. Lalik, dated 9/10/10 |
| 111 | H&H Bus Payroll Summary from August 1, 2009 through August 10, 2010 |

Respectfully submitted,

_____/s/_____
John Alvin Henderson (Fed. Bar No. 28419)
U.S. EEOC
Baltimore Field Office
10 S. Howard Street, 3rd Floor
Baltimore, MD 21201
Washington, DC  20036
Tel: 410-209-2246
Fax: 410-962-4270
John.henderson@eeoc.gov

_____/s/_____
Linda Hitt Thatcher (Fed. Bar No. 05039)
Wayne B. Wiseman (Fed Bar No. 17462)
Robert J. Baror (Fed. Bar No. 17763)

THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, MD 20770
Tel: 301-441-1400
Fax: 301-441-9602
www.thatcherlaw.com

Counsel for Plaintiff-Intervenor
Ora Louise Borrell

(*Signed by Plaintiff with permission from Plaintiff-Intervenor*)

_____/s/_____
Paul J. Kennedy (Fed. Bar No. 15447)
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.842.3400 Telephone
202.842.0011 Facsimile
pkennedy@littler.com

AND

Elizabeth A. Lalik (admitted *pro hac vice*)
Melanie G. Augustin (admitted *pro hac vice*)
Littler Mendelson, P.C.
1650 Tysons Boulevard, Suite 700
McLean, VA 22102
703.442.8425 Telephone
703.442.8428 Facsimile
elalik@littler.com
maugustin@littler.com

Counsel for Defendant
Bardon, Inc. t/a Aggregate Industries

(*Signed by Plaintiff with permission from Defendant*)

September 15, 2010